IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| ALEXIS MARIE PAYTON,<br><br>        Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>        Defendant. | Civil Action No. 2:25-cv-99 |

**COMPLAINT**

Plaintiff Alexis Marie Payton, by counsel, files this Complaint against Defendant Equifax Information Services, LLC. In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Less than ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers were able to identify at least one error on their credit reports.[2]

4. One issue that plagues consumers is a "mixed file," which occurs when a consumer's file is mixed with that of another consumer who has similar identifying information.

5. Here, Equifax mixed Ms. Payton with her twin brother, Alexander Lamarr Payton, despite his having a different first and middle name and social security number. As a result, at least two credit accounts, three inquiries, and an inaccurate employer appeared on Ms. Payton's Equifax report.

6. This mix was particularly concerning to Ms. Payton, who works for the United States Coast Guard and must maintain a satisfactory credit history as a condition of her employment.

7. Ms. Payton has also learned that Equifax disclosed her personal credit information to her brother and to her brother's creditors when it mixed her credit file with his.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

8. Ms. Payton alleges claims against Equifax for violating the FCRA, including: (1) §1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports; (2) 15 U.S.C. § 1681b(a) for providing her credit information to her brother and his creditors without a permissible purpose; and (3) 15 U.S.C. § 1681e(a) for failing to maintain reasonable procedures to limit to furnishing of consumer reports to the purposes listed under §1681b and §1681b.

## JURISDICTION AND VENUE

9. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Payton's claims occurred in this District, where she resides.

## PARTIES

11. Ms. Payton is a natural person residing in this District and Division and a consumer as defined by 15 U.S.C. § 1681a(c).

12. Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

13. Ms. Payton works for the United States Coast Guard and must maintain a satisfactory credit history as a condition of her employment.

14. Ms. Payton reviewed her Equifax credit report in the summer of 2024 and learned that her twin brother's information appeared on her credit reports.

15. This information included at least two credit card accounts, several inquiries and an inaccurate employer. None of this information belonged to Ms. Payton but instead belonged to her twin brother.

16. Equifax allowed this information to be added to Ms. Payton's file even though she has a different name, social security number, and address than her twin brother.

17. Ms. Payton also learned that when Equifax mixed her file with her brother's, it disclosed her personal credit information to both her brother and his creditors.

18. Because of Equifax's conduct, Ms. Payton has suffered significant actual damages, including a reduced credit score, invasion of privacy, embarrassment, and emotional distress.

### *Equifax's FCRA Violations Were Willful*

19. Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

20. As early as 1992, enforcement action was brought against Experian [formerly TRW, Inc.] in 1991 and 1992 and resulted in consent orders where Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. *See TRW, Inc. v. Morales*, Civ. Action No. 3-91-1340-H (N.D. Tex. 1991); *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991).

21. Then, in 2015, the New York Attorney General was forced to sue Experian, Equifax, and Trans Union because of their conduct in mixing consumer credit files. As part of the settlement, Defendants agreed to implement procedures to ensure accurate reporting. https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf

22. Shortly after, the lawsuit resulted in an Agreement of Assurances between Experian, Equifax, Trans Union, and several Attorneys General relating to the Defendants' responsibilities to prevent mixed files. Experian, Equifax, and Trans Union entered into an "Assurance of Voluntary Compliance" to ensure that it would implement changes.

http://www.myfloridalegal.com/EC_Edoc.nsf/0/3D93314A8135213B85257E5B00611557/%24file/Equifax+Experian+TransUnion+05-20-2015.pdf.

23. Despite this extensive notice, Equifax's computer systems still cause mixed files because they do not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full social security number are present. Equifax does this to sell more credit reports.

24. Despite their recognition of the mixed file problem, Equifax knowingly chooses to ignore the mixed-file problem, even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

25. Moreover, Equifax and its competitors have been sued repeatedly for failing to prevent mixed consumer files. *See, e.g.*, *Miller v. Equifax Info. Servs., LLC*, No. 3:11-cv-1231 (D. Or. 2011) (jury verdict of $18.6 million); *Malverty v. Equifax Info. Servs. LLC*, No. 8:17-cv-1617 (M.D. Fla. 2017); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union* (E.D. Cal.) ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010); *Neclerio v. Trans Union, LLC*, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011); *Calderon v. Experian Info. Sols, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Info. Sols., Inc.*, Civ. No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Sols., Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Sols.*, 2004 U.S. Dist. LEXIS 10705, at *20 (E.D. Tex. 2004); *Cartwright v. Experian*, Civ. No. CV 09-427 (C.D. Cal. 2009); *Campbell*

*v. Experian Info. Sols., Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Sols., Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs., LLC*, No. 48-2003-CA-9035-O (Orange County 2007).

26. Despite these lawsuits and enforcement actions, Equifax has not altered its procedures to ensure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

27. Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would not be favored by its paying customers, who are more interested in received overinclusive reports instead of accurate ones.

28. As a result, at all times relevant to this Complaint, Equifax's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)

29. Ms. Payton incorporates the preceding allegations.

30. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Payton's credit reports and credit files it published and maintained.

31. Because of Equifax's conduct, Ms. Payton suffered actual damages, including, without limitation, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

32. Equifax's conduct in violating § 1681e(b) was willful, rendering it liable to Ms. Payton for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n. In the alternative, it was negligent, which entitles Ms. Payton to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. §1681b(a)

33. Ms. Payton incorporates the preceding allegations.

34. Equifax violated the FCRA, 15 U.S.C. §1681b(a), by furnishing Ms. Payton's consumer reports to her brother and his creditors without a permissible purpose to do so.

35. As a result of Equifax's conduct, Ms. Payton suffered actual damages including, without limitation, invasion of privacy, stress, and other emotional distress.

36. Equifax's conduct was willful, rendering it liable for punitive damages under 15 U.S.C. §1681n.  In the alternative, Equifax was negligent, entitling Ms. Payton to recovery under 15 U.S.C. §1681o.

37. Ms. Payton is also entitled to recover actual damages, statutory damages, costs and attorneys' fees under 15 U.S.C. §1681n and §1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. §1681e(a)

38. Ms. Payton incorporates the preceding allegations.

39. Equifax violated the FCRA, 15 U.S.C. §1681e(a) by furnishing Ms. Payton's consumer reports to her brother and his creditors, without a permissible purpose to do so and by failing to maintain reasonable procedures to limit to furnishing of consumer reports to the purposes listed under §1681b.

40. As a result of Equifax's conduct, Ms. Payton suffered actual damages including, without limitation, invasion of privacy, stress, and other emotional distress.

41. Equifax's conduct was willful, rendering it liable for punitive damages under 15 U.S.C. §1681n. In the alternative, Equifax was negligent, entitling Ms. Payton to recovery under 15 U.S.C. §1681o.

42. Ms. Payton is also entitled to recover actual damages, statutory damages, costs and attorneys' fees under 15 U.S.C. §1681n and §1681o.

WHEREFORE, Ms. Payton demands judgment for actual, statutory, and punitive damages against Defendant as pleaded above; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**ALEXIS MARIE PAYTON**

By: _/s/ Kristi C. Kelly_
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*

8